UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT SCHUTZA,<br><br>                                  Plaintiff,<br>v.<br><br>UNION CITY INVESTMENTS LLC, a California Limited Liability Company; SHAWN LARKIN; and DOES 1-10,<br><br>                                Defendants. | Case No.: 19-cv-00986-AJB-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (Doc. No. 4)** |

Presently before the Court is Defendant Union City Investments LLC's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 4.) The motion is joined by Defendant Shawn Larkin. (Doc. No. 10.) Plaintiff Scott Schutza ("Plaintiff") opposed the motion. (Doc. No. 8). Defendant Union City Investments LLC filed a reply, which was also joined by Defendant Shawn Larkin. (Doc. Nos. 9–10.) For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion to dismiss.

**I.    BACKGROUND**

This case is an action alleging violations of the Americans with Disabilities Act of 1990 ("ADA") and the Unruh Civil Rights Act ("Unruh Act"). For the purpose of resolving the instant motion, the facts as alleged in Plaintiff's Complaint are taken as true. *Gilley v.*

1

*JPMorgan Chase Bank, N.A.*, Case No. 12-CV-1774-AJB-JMA, 2012 WL 10424926, at *1 (S.D. Cal. Oct. 12, 2012).

Plaintiff is a paraplegic and uses a wheelchair for mobility. (Complaint "Compl." ¶ 1.) Defendant Union City Investments LLC owns real property located at or about 214 Town Center Pkwy, Santee, California. (*Id.* ¶ 3.) Defendant Shawn Larkin owns Growler's Sub Shack ("the Restaurant") located at or about 214 Town Center Pkwy, Santee, California. (*Id.* ¶ 5.)

In October 2018, Plaintiff visited the Restaurant with the "intention to avail himself of its goods and to assess the business for compliance with the disability access laws." (*Id.* ¶ 10.) On the date of the visit, Plaintiff alleges Defendants failed to provide accessible and ADA compliant: (1) parking spaces, (2) dining tables, and (3) paths of travel. (*Id.* ¶ 12–20.) Plaintiff states he personally encountered these barriers. (*Id.* ¶ 21.) Additionally, Plaintiff alleges that even though he did not personally enter the restroom, Defendants also failed to provide an accessible ADA compliant restroom. (*Id.* ¶ 25.) Plaintiff says he "will return to the Restaurant to avail himself of its goods and to determine compliance with the disability access laws once it is represented to him that the Restaurant and its facilities are accessible." (*Id.* ¶ 28.)

Plaintiff filed a Complaint against Defendants on May 27, 2019. (Doc. No. 1.) On June 26, 2019, Defendant Union City Investments LLC filed a motion to dismiss, which was joined by Defendant Shawn Larkin. (Doc. Nos. 4,10.) On July 11, 2019, Plaintiff opposed the motion, and Defendants replied on July 18, 2019. (Doc. Nos. 8, 9.) This order follows.

## II. REQUEST FOR JUDICIAL NOTICE

Defendant Union City Investments, LLC requests judicial notice of the complaint filed in *Scott Schutza v. William B. Cuddeback*, Case No. 16-CV-2746-BAS-KSC, (S.D. Cal. Nov. 7, 2016). (Doc. No. 4-2 at 2.) Plaintiff does not oppose this request.

Federal Rule of Civil Procedure 201 permits a court to take judicial notice of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is

"not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). Under this rule, a court may "take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment," but it "cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Under Rule 201, judicial notice of the complaint in *Scott Schutza v. William B. Cuddeback* is appropriate. "Courts have consistently held that courts may take judicial notice of documents filed in other court proceedings." *See NuCal Food, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012). However, "[w]hile the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents . . . are not." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004). Based on this authority, the Court **GRANTS** Defendant's request to the extent it seeks judicial notice of the existence of the complaint in *Scott Schutza v. William B. Cuddeback*.

## III. LEGAL STANDARDS

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. While lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction.") (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014)); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke

federal jurisdiction." *Id.* The court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

"[I]n a factual attack," on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving such an attack, unlike with a motion to dismiss under Rule 12(b)(6), a court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* Moreover, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.* Once the defendant has moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing the court's jurisdiction. *See Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**B.      Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

A complaint or counterclaim generally must satisfy the minimal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) to evade dismissal under a Rule 12(b)(6) motion. *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). Rule 8(a)(2) requires that a pleading stating a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" and the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hartmann v. Cal. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint based on Plaintiff's lack of standing, and also Plaintiff's failure to state a claim. (Doc. No. 4-1.) Defendants also asks that the Court decline supplemental jurisdiction over Plaintiff's Unruh Act claim for relief. (*Id.*) The Court addresses each ground of dismissal below.

### A. Defendants' Motion to Dismiss Under Rule 12(b)(1) For Lack of Standing

First, Defendants urges dismissal based on Plaintiff's alleged lack of standing. (Doc. No. 4-1 at 10.) In particular, Defendants take issue with Plaintiff's failure to explicitly claim he encountered a barrier to accessibility. (*Id.* at 11.) Plaintiff disagrees, arguing instead that he has standing because he has pled he personally encountered the ADA violations, and he intends to return to the Restaurant, but is deterred from visiting until the

5

violations are remedied. (Doc. No. 8 at 14.) The Court concludes there are adequate facts demonstrating Plaintiff's standing.

Federal courts must "take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the act." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039–40 (9th Cir. 2008) (internal quotations omitted). Unlike challenges to a complaint for failure to state a claim, challenges to constitutional standing fall under Federal Rule of Civil Procedure 12(b)(1). Accordingly, a plaintiff's statement of subject-matter jurisdiction is not governed by the strict pleading standard of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007). *See Maya*, 658 F.3d at 1067. To be sure, "this is not to say that a plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an ingenious academic exercise in the conceivable to explain how defendants' actions caused his injury." *Id.* at 1068 (internal quotations omitted). But each element of standing need only "be supported . . . with the manner and degree of evidence required at the successive stages of litigation." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Accordingly, the Court must, at this stage, accept as true all material allegations of the complaint and construe those allegations in favor of the complaining party. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

A disabled individual claiming access discrimination must establish Article III standing to maintain a suit under the ADA. *See Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011). To demonstrate Article III standing, Plaintiff must plead facts showing he suffered "an injury-in-fact, that the injury is traceable to the [defendant's] actions, and that the injury can be redressed by a favorable decision." *Id.* at 946. Because injunctive relief is the only remedy available to private plaintiffs alleging ADA violations, Plaintiff must also demonstrate a "real and immediate threat of repeated injury." *Id.* Each element is addressed in turn below.

//
//

### 1. Injury-in-fact

To establish standing, Plaintiff must first sustain an injury-in-fact. Article III "requires that the party seeking review be himself among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972). A plaintiff has sustained an injury-in-fact only if she can establish "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). In order to establish an injury in fact, Plaintiff must plead that he encountered alleged ADA violations that "affect[] the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Chapman*, 631 F.3d at 947 (en banc) (internal quotation marks omitted).

Here, Plaintiff has offered enough facts to demonstrate injury-in-fact. Defendants argue Plaintiff "never explicitly alleges he encountered a barrier to accessibility" and "does not explain how *any* barrier relates to his disability." (Doc. No. 4-1 at 11–12.) To the contrary, Plaintiff does allege he "personally encountered" inaccessible parking spaces, dining tables, and paths of travel in violation of the ADA standards. (Compl. ¶¶ 13–21.) It is true that there are not an abundance of details, but Plaintiff does claim "the parking stalls reserved for persons with disabilities were about 108 inches in width while the shared access aisle that accompanied the parking stalls was only about 60 inches in width. These are not van accessible." (*Id.* at 3 n.1.) Additionally, Plaintiff adds "[t]he lack of accessible facilities created difficulty and discomfort for the Plaintiff." (*Id.* ¶ 23.) While Defendants argue Plaintiff does not detail with specificity the ADA violations (Doc. No. 4-1 at 11–12), painstaking specificity is not required to assert standing. *See Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 841 (9th Cir. 2007) (allegations that Plaintiff encountered barriers to access, and that Plaintiff was deterred by accessibility barriers from visiting the establishment, was enough for standing to sue for violations of the ADA); *Langer v. 6830 La Jolla Blvd., LLC*, No. 3:19-CV-1790-GPC-NLS, 2020 WL 353601, at *2 (S.D. Cal. Jan. 21, 2020) (stating that for purposes of standing, "[u]nder the more relaxed pleading standards of the ADA, Plaintiff need not articulate how the Restaurant's

parking specifically violated the ADA Accessibility Guidelines. . . ."). Therefore, Plaintiff has pled enough in his Complaint to show an injury-in-fact.

### 2. Injury Traceable To Defendants' Actions

Next, Defendants aver Plaintiff fails to explain how his injury is traceable to the challenged conduct of Defendants. (Doc. No. 4-1 at 12.) Specifically, Defendants state Plaintiff "does not allege that the Defendant has control over the Restaurant or the parking space or path of travel where Plaintiff thinks there are ADA violations." (*Id.*) However, Defendants' argument is misplaced because the issue of control is irrelevant to this analysis. Indeed, 42 U.S.C. § 12182(a) provides that the ADA's prohibitions against discrimination apply to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). There is no mention of control in the statute, and the ADA's express terms hold a landlord who owns a place of public accommodation may be liable for violations of the statute. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 832–834 (9th Cir. 2000). Here, Plaintiff adequately alleges Defendant Union City Investments LLC at all relevant times "owns the real property located at or about 214 Town Center Pkwy, Santee, California." (Compl. ¶ 3.) Likewise, Plaintiff asserts "Defendant Shawn Larkin owns Growler's Sub Shack ("Restaurant") located at or about 214 Town Center Pkwy, Santee, California, currently." (*Id.* ¶ 5.) Lastly, Plaintiff states he went to the Restaurant in October 2018. (*Id.* ¶ 10.) Accordingly, the second element of standing is satisfied as Plaintiff sufficiently pleads that Defendants "own the real property that houses the restaurant which discriminated against him." *Langer v. Kamad LLC*, Case No. 18-CV-00126-BEN-KSC, 2018 WL 6651536, at *2 (S.D. Cal. Dec. 18, 2018).

### 3. Redressability and Threat of Future Harm

Lastly, to complete the analysis for standing, Plaintiff must allege a threat of future injury in order to assert redressability. This is because where, as here, a party seeks injunctive relief, "past exposure to illegal conduct does not in itself show a present case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (alteration omitted).

8

Instead, the plaintiff must allege "continuing, present adverse effects" stemming from the defendant's actions. *Id.* Thus, "a plaintiff seeking injunctive relief must additionally demonstrate a sufficient likelihood that he will again be wronged in a similar way." *Chapman*, 631 F.3d at 948 (internal quotation marks omitted). "[A] plaintiff can demonstrate sufficient injury to pursue injunctive relief when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *Id.* at 950.

Plaintiff alleges sufficient injury to pursue injunctive relief. Defendants attempt to argue Plaintiff cannot show a threat of continued harm because he does not show intent to return to the Restaurant. (Doc. No. 4-1 at 13.) Plaintiff, however, claims he intends to return to the Restaurant, but he is deterred from doing so "because of his knowledge of the existing barriers." (Compl. ¶ 28.) Under Ninth Circuit authority, "[a] plaintiff experiences continuing adverse effects where a defendant's failure to comply with the ADA deters her from making use of the defendant's facility." *Chapman*, 631 F.3d at 953. "[W]hen a plaintiff who is disabled within the meaning of the ADA has actual knowledge of illegal barriers at a public accommodation to which he or she desires access, that plaintiff need not engage in the 'futile gesture' of attempting to gain access in order to show actual injury. . . ." *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002) (quoting 42 U.S.C. § 12188(a)(1)).

After review of the Complaint, the Court finds Plaintiff has pled "continuing, present adverse effects" stemming from the defendant's actions. Plaintiff has alleged the inaccessible barriers (i.e., inaccessible parking spaces, dining tables, paths of travels, and restrooms), how his disability was affected by it (i.e., "difficulty and discomfort"), and how the alleged barriers deter him from revisiting the Restaurant because "[i]f the barriers are not removed, the plaintiff will face unlawful and discriminatory barriers again." (Compl. ¶¶ 13, 16, 19, 23, 28.) These allegations are enough to constitute redressability and threat of future harm. *See Doran*, 524 F.3d at 1041 (plaintiff had standing where plaintiff visited a public accommodation on prior occasion and was deterred from visiting that

9

accommodation by accessibility barriers); *see also Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1011 (9th Cir. 2017) (same).

Accepting as true the allegations in the Complaint, and construing the allegations in favor of Plaintiff, the Court holds Plaintiff has standing to bring this claim. Accordingly, to the extent Defendants seek dismissal based on Rule 12(b)(1) for lack of subject matter jurisdiction, Defendants' motion is **DENIED**.

### B. Defendants' Motion to Dismiss Under Rule 12(b)(6) For Failure to State a Claim

#### 1. Whether Plaintiff Has Plausibly Alleged an ADA Claim For Relief

While Plaintiff may have offered enough to show standing to assert his claims, whether he has adequately pled viable causes of action is a completely separate question. Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)). "Discrimination" under Title III of the ADA is defined in part to include "a failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "[A] plaintiff need not show intentional discrimination in order to make out a violation of the ADA." *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

The parties do not dispute that Plaintiff is a disabled individual under the ADA. However, Defendants challenge the second element by arguing Plaintiff only offers "mere conclusions" that Defendants own or operate a place of public accommodation. (Doc. No.

10

4-1 at 14.) The Ninth Circuit has explained that the phrase "place of public accommodation" refers to a physical place, and includes sales establishments. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) (concluding that places of public accommodation are "actual, physical places"); *see* 42 U.S.C. § 12181(7)(E) (defining a place of public accommodation to include any "sales. . . establishment"). Here, Plaintiff alleges both that Defendants "own" the real property he encountered the ADA violations on, and also that "[t]he Restaurant is a facility open to the public, a place of public accommodation, and a business establishment." (Compl. ¶ 11.) More is not necessary at the pleading stage to allege that Defendants own a place of public accommodation and so, the second element of an ADA claim is satisfied.

As to the third element—whether Plaintiff was denied public accommodations by Defendants because of his disability—Defendants contend the assertions in the Complaint are conclusory and thus fail to plausibly allege they denied Plaintiff public accommodation based on his disability. (Doc. No. 401 at 14.) Taking all material allegations of fact as true, the Complaint shows Plaintiff personally encountered[1] inaccessible: (1) parking spaces, (2) dining tables, and (3) paths of travel, and these barriers caused him "difficulty and discomfort" as a disabled individual. (Compl. ¶ 12–21). However, Plaintiff does not provide sufficient factual allegations as to how he was denied accommodation because he is in a wheelchair. Plaintiff provides some facts as to the parking spaces, but for the dining tables and paths of travels, Plaintiff only states that Defendants "did not provide accessible" "dining tables" and "paths of travel." But were the dining tables too high? Were they too low? Where were the paths of travel? How were they inaccessible? Plaintiff leaves

---

[1] In his Complaint, Plaintiff alleges that even though he did not personally go into the restroom, Defendants provided inaccessible restrooms. For example, he claims "there is no clear floor space in front of the disposable toilet seat cover dispenser because it is mounted on the wall behind the toilet." (Compl. ¶ 24–25.) "Although Plaintiff may seek remediation of barriers he did not personally encounter, he must provide facts demonstrating that he personally encountered at least one barrier, related to his personal disability, to satisfy the standing requirements." *Velez v. Il Fornanio (Am.) Corp.*, No. 18-CV-1840-CAB-MDD, 2018 WL 6446169, at *4 (S.D. Cal. Dec. 10, 2018).

everyone guessing. As Plaintiff's allegations are only "naked assertions devoid of further factual enhancement, and the Court need not accept "legal conclusions" as true, the Court finds Plaintiff's allegations for this element of an ADA claim insufficient. *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In conclusion, the Court holds that Plaintiff's Complaint lacks sufficient facts to support a cognizable ADA claim.

### 2. Whether the Court Will Exercise Supplemental Jurisdiction Over Plaintiff's Unruh Civil Rights Act Claim

Defendants also urge the Court to decline to exercise supplement jurisdiction over Plaintiff's second cause of action for violation of the Unruh Civil Rights Act ("Unruh Act"). (Doc. No. 4-1 at 17.) Plaintiff argues there is no basis for the Court to decline supplemental jurisdiction over the claim. (Doc. No. 8 at 20.) The Court agrees with Defendants.

Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). The decision to decline supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) should be informed by the values of economy, convenience, fairness and comity. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996).

Plaintiff's state law claim arises under California's Unruh Act. The Unruh Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). "A violation of the right

12

of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101–3361) shall also constitute a violation of this section." Cal. Civ. Code § 51(f). "A violation of the Unruh Act may be maintained independent of an ADA claim where a plaintiff pleads 'intentional discrimination in public accommodations in violation of the terms of the Act." *Earll v. eBay, Inc.*, 5:11–cv–00262, 2011 WL 3955485, at *3 (N.D. Cal. Sept. 7, 2011) (quoting *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 668 (2009)).

Defendants present two arguments as grounds to decline supplemental jurisdiction. First, Defendants argue Plaintiff's inclusion of his Unruh Act claim constitutes impermissible forum shopping because it is an end-around to California's heightened pleading standards requiring disability access plaintiffs to verify their complaints in state court. (Doc. No. 4-1 at 17–18.) And for the second ground, Defendants contend that because Unruh Act claims allow damages of $4,000 per violation, whereas the ADA only permits injunctive relief, the California claim predominates over the ADA claim. (*Id.* at 18.)

As to Defendants' first argument, the Court agrees and declines to exercise supplemental jurisdiction out of deference to California's heightened pleading requirements for disability lawsuits, and in the interest of comity, as California courts should interpret the state's disability laws. Indeed, the Court will join other California district courts that have identified these factors as a "compelling reason" to decline to exercise supplemental jurisdiction over disability claims arising under the Unruh Act. *See Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1030-31 (S.D. Cal. 2017) ("[A]s a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim."); *Molski v. Hitching Post I Restaurant, Inc.*, No. 04-cv-1077-SVWRNBX, 2005 WL 3952248 at *9 (C.D. Cal. May 25, 2005) ("Because the California courts should be given an opportunity to interpret California's disability laws, because the calculated effort to avoid having California courts decide issues of California law is to be discouraged, and because the parties themselves are entitled to a surer-footed interpretation

13

of California's disability laws, the Court finds that compelling reasons exist to decline supplemental jurisdiction over [Plaintiff's] state law claims.").

Lastly, the Court agrees with Defendants' argument that state law issues will predominate over ADA claim issues. If the Court exercises supplemental jurisdiction over the Unruh Act claim, (1) Defendants' intent, (2) monetary damages, and (3) Plaintiff's emotional distress would be extraneous issues that would have to be litigated and yet not relevant to the federal claim. As such, given these additional elements necessary for an Unruh Act claim, the Court will decline to exercise jurisdiction over the state law claim. *See Feezor v. Tesstab Operations Grp., Inc.*, 524 F. Supp. 2d 1222, 1224 (S.D. Cal. 2007) ("Given the disparity in terms of comprehensiveness of the remedy sought, state law claims substantially predominate over the ADA for purposes of 28 U.S.C. § 1367(c)(2).").

The Court thus **DISMISSES** the Unruh Act claim **WITHOUT PREJUDICE**. Plaintiff, if he likes, may assert his state claim in state court.

## V. CONCLUSION

In light of the foregoing reasons, Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. To summarize, Defendants' motion to dismiss is **DENIED** to the extent it seeks dismissal based on lack of subjection matter jurisdiction. However, because Plaintiff's fails to adequately plead an ADA violation, Plaintiff's ADA claim is **DISMISSED**. But appearing that amendment would not be futile, the Court **GRANTS** Plaintiff leave to amend his ADA claim. Lastly, Plaintiff's Unruh Act claim is **DISMISSED WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND**. Plaintiff is to file an amended complaint consistent with this order by **March 16, 2020**.

**IT IS SO ORDERED**.

Dated: February 25, 2020

Hon. Anthony J. Battaglia
United States District Judge